UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Alacia C. Quinton as PR for the Estate of April Lynn Quinton, ) ) ) | Civil Action No.: 1:10-cv-02187-JMC |
| Plaintiff, ) ) | |
| v. ) ) | Defendants' Motion for Partial Summary Judgment |
| Toyota Motor Corporation; Toyota Motor Sales U.S.A., Inc.; Toyota Motor Engineering and Manufacturing North America, Inc.; Toyoda Gosei North America Corporation, ) ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

Defendants, Toyota Motor Corporation, Toyota Motor Sales U.S.A., Inc., Toyota Motor Engineering and Manufacturing North America, Inc., and Toyoda Gosei North America Corporation (hereinafter "Defendants") file this Motion for Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, on Plaintiff's unsupported defect claims. The Defendants are entitled to summary judgment in this automotive product liability action because Plaintiff lacks the requisite evidence and expert testimony to establish a genuine issue of material fact as to essential elements of her airbag design defect claims, as well as any defect claims whatsoever regarding the Toyota Camry's roof and seat belt system.

## I. FACTUAL BACKGROUND

On October 14, 2009, April Quinton was driving a rented 2009 model year Toyota Camry when she was involved in a single-vehicle accident. Ms. Quinton was wearing her seatbelt and was the only occupant in the Camry. As she drove north into a left-

1

hand curve, the vehicle exited the road to the left, struck an embankment, rolled a number of times, and came to rest on its wheels. Ms. Quinton sustained fatal injuries in the accident and died on October 23, 2009.

## II. PROCEDURAL HISTORY

Plaintiff sued the Defendants asserting product liability causes of action based on strict liability, negligence, and breach of warranties. Specifically, in her Second Amended Complaint,[1] Plaintiff claims that Ms. Quinton's death was a result of alleged design and manufacturing defects of three systems in the 2009 Toyota Camry: (1) the seat belt restraint system, (2) the supplemental restraint system (specifically, the side curtain airbag), and (3) the roof structure. See Docket No. 54. In a product liability action, there are three defects a plaintiff can allege: 1) a manufacturing defect, 2) a warning defect, and 3) a design defect. Watson v. Ford Motor Co., 389 S.C. 434, 444, 699 S.E.2d 169, 174 (2010). When a manufacturing defect claim is made, a plaintiff alleges that a particular product was defectively manufactured. Id. When a warning defect claim is made, a plaintiff alleges that he was not adequately warned of dangers inherent to a product. Id. When a design defect claim is made, a plaintiff alleges that the product at issue was defectively designed, thus causing an entire line of products to be unreasonably dangerous. Id. Here, Plaintiff alleged design and manufacturing defects.

---

[1] Plaintiff filed her Second Amended Complaint on August 3, 2011 adding defendant Toyoda Gosei North America Corporation as a party to the litigation. This is the operative Complaint for this action.

2

During discovery, Toyota asked Plaintiff to identify the factual bases for her defect allegations through contention interrogatories. Plaintiff responded to these interrogatories on August 23, 2011 as follows:

> 17.    Identify each and every factual basis, including but not limited to specific documents and testimony, upon which Plaintiff bases the contention that, the Toyota Defendants "failed to properly design the vehicle."
>
> ANSWER:   Objection. Overly broad and unduly burdensome; vague and ambiguous. Plaintiff also objects to this interrogatory in that it seeks information covered by the attorney work product doctrine and **calls for expert opinion**. Without waiving said objection, see the Complaint filed in this case. Also, at this time, discovery has just begun and Plaintiff has yet to depose Toyota representatives with knowledge about the design and manufacture of the subject vehicle. **Plaintiff will supplement this response with expert testimony** in accordance with a scheduling order entered by the court.

See Plaintiff's Answers to Defendant Toyota Motor Sales, U.S.A., Inc.'s First Set of Interrogatories to Plaintiff, pg. 9 (attached hereto as **Exhibit A**) (emphases added).

Pursuant to the expert witness disclosure deadline in the Final Scheduling Order, Plaintiff disclosed her expert witnesses and produced her experts' written reports per Fed. R. Civ. P. 26(a)(2) on October 1, 2012. See Docket No. 90. Plaintiff's experts identified no design or manufacturing defect opinions related to the roof structure or seat belt restraint system in their reports. Additionally, Plaintiff's experts' reports do not include any opinion that the supplemental restraint system, including the side curtain airbag, was defectively designed. Her experts only rendered opinions regarding an alleged manufacturing defect in the side curtain airbag. See Deposition of R. Edwards, 139:3-8 (attached hereto as **Exhibit B**) ("Q: I take it pretty clearly from your work in this case that you've concluded that there was a manufacturing defect, meaning the failure

3

of this airbag to comply with the specifications?  A:  Correct.") and Deposition of R. Bowser, 46:18-47:5 (attached hereto as **Exhibit C**) ("Q:  Do you have an opinion, to a reasonable degree of engineering probability, that the 2009 Toyota Camry's driver's curtain air bag involved in this crash had a manufacturing flaw or manufacturing defect?  A:  Well, as I said, yes, sir.")

Likewise, at their depositions, Plaintiff's expert witnesses gave no design defect opinions related to any system in the subject vehicle and did not opine that the roof or driver's seat belt system were defective in any way.  Pursuant to FRCP 26(a)(2)(D)(ii), Plaintiff had until January 3, 2013 to disclose rebuttal opinions for her experts, but did not do so.  Further, the discovery deadline in this case was January 18, 2013.  As such, Plaintiff's opportunity to disclose any additional expert opinions has passed.

### III.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[I]n evaluating a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party." Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 124 (4th Cir 1990).

In a product liability action in South Carolina, expert testimony is necessary to establish the essential elements of the claim.  "When the plaintiff in a product liability

4

case bears the burden of proof as to any issue within a subject matter beyond the common knowledge and understanding of lay jurors, that plaintiff must present expert witness testimony in order to meet its burden." 5 Star Inc. v. Ford Motor Co., 395 S.C. 392, 398-99, 718 S.E.2d 220, 224 (Ct. App. 2011) (citing Watson v. Ford Motor Co., 389 S.C. 434, 445, 699 S.E.2d 169, 175 (2010)); see also, Disher v. Synthes (U.S.A.), 371 F.Supp.2d 764, 772 (D.S.C. 2005) (applying South Carolina law) (holding that in a product liability action, to prove "defective design," a plaintiff "must establish proximate cause through competent expert testimony"); Graves v. CAS Medical Systems, Inc., 735 S.E.2d 650 (2012) (affirming summary judgment in a product liability case involving a baby monitor where plaintiff did not support her defect claim with expert testimony because the subject matter was found as a matter of law to be beyond the ordinary understanding and experience of a jury).

## IV.  LEGAL ANALYSIS

The Defendants are entitled to summary judgment as to all of Plaintiff's defect allegations, except for her side curtain airbag manufacturing defect claim, because Plaintiff has failed to offer the expert opinions necessary for her to prevail in this case and the time for providing such evidence has passed.

A. Plaintiff Has Failed to Raise a Genuine Issue of Material Fact that a Design Defect Exists Within the Supplemental Restraint System, or that Any Defect Exists in the Seat belt Restraint System or the Roof Structure of the 2009 Toyota Camry.

To survive summary judgment in this product liability action, South Carolina law requires a plaintiff to present admissible evidence: "(1) that she was injured by the product; (2) that the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant; and (3) that the injury occurred

5

because the product was in a defective condition unreasonably dangerous to the user." Madden v. Cox, 284 S.C. 574, 579, 328 S.E.2d 108, 112 (Ct. App. 1985). South Carolina's state and federal courts consistently have recognized the need for expert testimony to establish these critical elements in a complex product liability case such as this. In Watson v. Ford Motor Co., 389 S.C. 434, 699 S.E.2d 169, 174 (2010), the South Carolina Supreme Court held that design defect claims in product liability actions require expert testimony because they "necessarily involve sophisticated issues of engineering, technical science, and other complex concepts that are quintessentially beyond the ken of a lay person." Watson, 699 S.E.2d at 174; id. at 180 ("neither of Respondents' experts presented admissible testimony. Without such testimony, Respondents failed to present a case for products liability."). The requirement of expert testimony to support a claim for a product design defect claim was recently reiterated by the South Carolina Supreme Court in a case involving a baby monitor. See Graves v. CAS Medical Systems, Inc., 735 S.E.2d 650 (2012). In Graves, the court affirmed summary judgment for the defendant because the plaintiff failed to provide admissible expert witness testimony to support her defect claim. The court held as a matter of law that the subject matter—the design of a baby monitor—was beyond the ordinary understanding and experience of a jury. Id. And because the plaintiff's experts had been excluded, the defendant was entitled to summary judgment. Id.

In this case, Plaintiff has failed to present any evidence, much less the required expert witness opinions, to support her defect claims, other than her allegation that the driver's curtain airbag was defectively manufactured, and under the Final Scheduling

Order, her time for doing so has passed.  Because such opinions are required, Plaintiff cannot meet her burden of proof as a matter of law.

> 1. *Plaintiff Has Failed to Create a Genuine Issue of Material Fact as to Whether the 2009 Camry's Supplemental Restraint System Is Defectively Designed.*

The 2009 Toyota Camry's Supplemental Restraint System consists of frontal airbags, side curtain airbags and front seat mounted side torso airbags.  In this accident, both driver and passenger side curtain airbags deployed as well as the driver's side torso airbag.  While Plaintiff has generally alleged manufacturing and design defects in this system, Plaintiff has provided no evidence to maintain a design defect claim as to any of the airbags in the subject vehicle.

Plaintiff's airbag expert, Robert Bowser, provides certain observations regarding the supplemental restraint system in the "Opinions and Analysis" section of his report. See Report of R. Bowser, dated October 1, 2012 (attached hereto as **Exhibit D**). While he provides <u>observations</u> regarding the system's design, Mr. Bowser does not provide any design <u>opinion</u> to a reasonable degree of engineering certainty.  Specifically, Mr. Bowser states, "[a] rollover sensor system for deploying the head curtain air bag is not available in the 2009 Toyota Camry.  Several passenger cars have included rollover sensors in their vehicles for head curtain air bags." Id. at p. 10.  This observation is merely a statement of fact.  Nowhere in his report does Bowser say that the 2009 Camry is defective and unreasonably dangerous because it lacks a rollover sensor. The fact that this statement is not an opinion is further shown in the concluding <u>question</u> in that section, wherein Bowser asks "[w]hat isn't clear is why Toyota didn't employ this technology in the 2009 Camry." Id.  Mr. Bowser's report raises issues and poses

7

questions but he provides no opinion to a reasonable degree of engineering certainty that the 2009 Camry's supplemental restraint system is defectively designed.

Mr. Bowser's failure to render a design defect opinion continued in his November 13, 2012 deposition:

> Q: And I think, when I asked you that question, I had, what I was thinking in my mind was, does Mr. Bowser believe that the curtain air bag in the 2009 Camry was defective in terms of its design, or does Mr. Bowser believe that the 2009 Toyota Camry's curtain air bag had a manufacturing flaw or manufacturing defect in it, and I guess that inquiry is related to the answer that you just gave, isn't it?
> ...
> A: Okay, well, to answer that specifically, ***I have not received enough information from Toyota or Toyota Gosei North America to really make a firm decision on whether it was a design flaw or a manufacturing flaw***. Based on previous work I did many years ago with Toyota, I think that they generally do a pretty thorough job in analyzing design, so ***if I was to take a lean, it would be towards that there was actually a manufacturing flaw in this particular vehicle***. See **Exhibit C**, 36:7-37:2 (emphases added).

Mr. Bowser was then asked specifically about any opinions related to the statements in his report about rollover sensor technology.

> Q: "…[W]ould you consider the absence of a rollover sensor in the 2009 Toyota Camry to be a safety defect in its design?"
>
> A: "***Probably not by itself***, but I think it ***could be*** contributory, yes, sir." Id. at 38:25-39:4. (emphases added)
>
> Q: "…[C]an a curtain air bag be reasonably safe without a rollover sensor?"
>
> A: "It can be ***reasonably safe***, I guess you could say that."
> Id. at 40:3-7 (emphasis added).

As shown in this testimony, Bowser did not opine that the absence of a rollover sensor is a safety defect, but he affirmatively testifies that the side curtain airbag can be

8

reasonably safe without it. His testimony falls well short of the Plaintiff's required proof that the product is "unreasonably dangerous." At best, Bowser says that the lack of a rollover sensor *could* contribute to a defect in the Camry's airbag system. A statement that something could be true is a far cry from an opinion that it is true to a reasonable degree of engineering certainty.

In addition to Mr. Bowser not providing an opinion on design defect related to the supplemental restraint system, no other engineering expert of Plaintiff has given such an opinion. Richard Edwards, Plaintiff's airbag materials expert, testified "[a]t this time, I will have to say I don't identify a design defect." See **Exhibit B** at 139:15-20. Plaintiff's biomechanics expert, Joseph Burton, deferred all opinions regarding the design of the airbags to Mr. Bowser. See Report of J. Burton, dated October 1, 2012, pg. 15-16 (attached hereto as **Exhibit E**) and Deposition of J. Burton, 35:17-22 (attached hereto as **Exhibit F**). Similarly, Ronald Kirk, Plaintiff's accident reconstruction expert, testified that he had no opinions with respect to whether there were any defects in this vehicle as that was "outside [his] area." See Deposition of R. Kirk, 143:25-144:6 and 144:19-22 (attached hereto as **Exhibit G**). Simply put, the only airbag defect claim that Plaintiff and her experts have supported is their allegation that a hole in the driver's curtain airbag was created during the manufacturing process and this hole prevented the curtain from fully inflating during the subject crash.

> *2. Plaintiff Has Failed to Create a Genuine Issue of Material Fact as to Whether the 2009 Camry's Seat Belt Restraint System Is Defective.*

As with the supplemental airbag restraint system, none of Plaintiff's experts have articulated an opinion regarding the design of the seat belt restraint system. Moreover, Plaintiff's experts have not identified any type of defect whatsoever in the Camry's seat

9

belt system. Mr. Bowser provided no opinions related to the seat belt system in either his report or deposition. Mr. Edwards testified specifically that he had no opinions about the performance of the seat belts. See **Exhibit B** at 140:9-14. Also, as stated above, Mr. Kirk testified that information about any defects in the vehicle were "outside [his] area." See **Exhibit G** at 143:25-144:6 and 144:19-22.

The only Plaintiff's expert to say anything specifically about the subject vehicle's seat belt system was, oddly enough, their biomechanics and injury mechanism expert, Dr. Joseph Burton. While having no opinions related to a design defect in the seat belt system, Dr. Burton made a general statement in his deposition that seemingly criticized the seat belt's performance in this accident. See **Exhibit F** at 65:4-66:25. In particular, Dr. Burton noted that the seat belt's performance would have been improved if its design had included a cinching latch plate or an "all belts to seats" design. See id. at 65:23-66:10. In light of this testimony, Dr. Burton was asked specifically whether his critique of the seat belt's design would have altered the decedent's injury outcome in the subject crash:

> Q: "Do you have an opinion to a reasonable degree of medical and forensic probability that an all-belts-to-seats installation of the driver's seatbelt in this 2009 Toyota Camry would have prevented Miss Quinton's partial ejection and fatal injuries.?
>
> A: "***I don't***."
>
> Q: "Do you have an opinion as to whether the use of a cinching latch plate, either in – in – by itself or in conjunction with all belts to seats would have prevented Miss Quinton's partial ejection and injuries in this case?"
>
> A: "***I don't have such an opinion***."

See **Exhibit F** at 67:1-12 (emphasis added).  Without an opinion that the alternative seat belt designs he identified would have prevented the decedent's injuries in this crash, Dr. Burton's statements about all-belts-to-seats and cinching latch plates are irrelevant and inadmissible.[2]  Therefore, Plaintiff's experts again offer no opinions at all or no opinions to a reasonable degree of engineering certainty on the issue of an alleged design defect.

> 3. *Plaintiff Failed to Create a Genuine Issue of Material Fact as to Whether the 2009 Camry's Roof Structure Is Defective.*

The roof structure of the 2009 Toyota Camry was generally criticized in Plaintiff's Second Amended Complaint.  See Docket No. 54, at ¶ 26.  However, Plaintiff has provided no expert testimony regarding any alleged design defect of the roof.  None of Plaintiff's experts provided any opinions criticizing the design of the Camry's roof in any report.  See **Exhibit D**, **Exhibit E**[3], Report of R. Edwards, dated October 1, 2012 (attached hereto as **Exhibit H**), and Report of R. Kirk (attached hereto as **Exhibit I**).  Likewise, no opinions were provided in any of Plaintiff's expert's depositions on this issue.  See **Exhibit B** at 140:9-14 ("Q:  Do you have any opinions or testimony that you intend to offer regarding the performance of the roof or the seat belts or any other crashworthiness aspect of this vehicle?  A:  At this time, I haven't investigated those things; so no."); **Exhibit G** at 144:7-14 ("Q:  In terms of the performance of the body structure…do you intend to offer any opinions as to whether there was excessive deformation, anything of that nature, in terms of performance of the body structures.  A:

---

[2] In addition, Dr. Burton, as a forensic pathologist, is not qualified to render design defect opinions regarding the Toyota Camry's seat belt system.

[3] Likewise, Dr. Burton is not qualified to render design defect opinions regarding the Toyota Camry's roof structure.

No.  You have my opinions."). Without any expert testimony, Plaintiff's roof structure defect claim must fail as a matter of law.

## V.  CONCLUSION

After extensive written and deposition discovery, it is clear that Plaintiff's case is singularly focused on one and only one defect claim—that the 2009 Toyota Camry's driver's curtain airbag was torn prior to the accident due to an alleged manufacturing defect.  Plaintiff has disclosed no expert testimony or other opinion evidence of a design defect in the 2009 Toyota Camry and without such evidence, there is no genuine issue of material fact as to her design defect claims.  Likewise, Plaintiff has failed to disclose any evidence to support her allegations that the Camry's seat belt system or roof are defective in any way, or that those defects proximately caused Plaintiff's injuries.  Therefore, the Defendants respectfully request the Court grant the Defendants summary judgment as to all of Plaintiff's defect claims, except for her claim that there is an alleged manufacturing defect in the driver's side curtain airbag.

Respectfully submitted,

BOWMAN AND BROOKE LLP

By: s/Angela G. Strickland
Joel H. Smith
Federal Bar No. 3910
E-mail address:
joel.smith@bowmanandbrooke.com
Angela G. Strickland
Federal Bar No. 9824
E-mail address:
angela.strickland@bowmanandbrooke.com
1441 Main Street, Suite 1200
Columbia, SC 29201
Tel: 803.726.7420
Fax: 803.726.7421

*and*

Bard D. Borkon
(*Pro Hac Vice*)
E-mail address:
bard.borkon@bowmanandbrooke.com
Bowman and Brooke LLP
150 South Fifth Street, Suite 3000
Minneapolis, MN 55402
Tel: 612-672-3241
Fax: 612-672-3200

Counsel for Defendants,
*Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor and Manufacturing North America, Inc., and Toyoda Gosei North America Corporation*

Date: February 14, 2013