# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Alacia C. Quinton as PR for the Estate of April Lynn Quinton, | C/A No. <u>1:10-2187-JMC</u> |
| Plaintiff, | |
| v. | **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION <u>FOR PARTIAL SUMMARY JUDGMENT</u>** |
| Toyota Motor Corporation, et al., | |
| Defendants. | |

Plaintiff Alacia C. Quinton, as Personal Representative for the Estate of April Lynn Quinton, opposes Defendants, Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering and Manufacturing North America, Inc., and Toyoda Gosei North America Corporation's (hereinafter "Toyota") Motion for Partial Summary Judgment regarding the 2009 Toyota Camry supplemental restraint system and Plaintiff's design defect claim.

As will be shown, Plaintiff has established that it was economically and technologically feasible to incorporate a rollover curtain shield airbag into the 2009 Camry. Toyota installed rollover curtain shield airbags in its 2009 model year SUVs, light trucks and passenger vans. Plaintiff has established that Toyota knew that occupants of its passenger cars would be seriously injured and killed without utilizing the rollover curtain shield airbag. The only arguable reason for Toyota not installing the rollover curtain shield airbag in the subject vehicle is a suggestion that out of position occupants could be injured. A suggestion with which Plaintiff's expert Bob Bowser disagrees.

There are genuine disputed issues of material fact which preclude a judgment as a matter of law on Plaintiff's claims. In support of Plaintiff's Opposition to Defendants' Motion for

Partial Summary Judgment, Plaintiff presents the following brief with attachments: Deposition of Bob Bowser (attached as Exhibit "A"), Bob Bowser Report (attached as Exhibit "B"), Bob Bowser C.V. (attached as Exhibit "C"), Toyota Document (redacted) Bates No. 00000207CA.0001-.0022 (attached as Exhibit "D"), Deposition of Ichiro Fukumoto (attached as Exhibit "E"), Deposition of Michael Klima (attached as Exhibit "F").

## I.     FACTS

On October 14, 2009, Plaintiff's decedent, April Lynn Quinton, was involved in a single vehicle rollover crash while traveling in a 2009 Toyota Camry. It is uncertain why the vehicle lost control, however the vehicle left the left side of the road in a counter-clockwise manner and began to rollover with the passenger side leading. Ms. Quinton was properly using the available seatbelt restraint system at the time of the accident. This vehicle was equipped with curtain shield airbags (CSAs) which were mounted along the roof rail above the vehicle's doors on each side of the vehicle. The CSAs are designed to deploy when the sensors detect a sufficient lateral impact. The CSAs are designed to cover the window openings and protect the occupant's head upon deployment. During the rollover accident, the passenger side CSA fully deployed. The driver's side CSA attempted to deploy but did not fully deploy. The driver's side CSA deployed over the driver's side rear window but did not fully deploy over the driver's side front window. During the rollover event, Ms. Quinton suffered severe head injuries from which she was unable to recover. After several weeks in the hospital, Ms. Quinton was taken off life support.

The parties agree that the reason the CSA did not fully deploy over the driver's front window was due to a hole in the bag from which the air escaped, thereby preventing the bag from filling and properly deploying. The parties dispute the factual issue of whether the 2009 Camry was defectively designed. Toyota decided not to include a rollover activated CSA that

2

they knew would have significantly reduced possible injuries sustained by occupants in the event of a rollover crash, even though such technology was technologically and economically feasible at the time the 2009 Camry was manufactured.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment should only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a). "In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party." *Miles v. DESA Heating, LLC*, 2012 U.S. Dist. LEXIS 45433 *8 (D.S.C. Mar. 27, 2012) (citing *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990)). "All that is required is that 'sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge resolve the parties' differing versions of the truth at trial.'" *Id.* at *8-9 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).

## III.     LAW AND ARGUMENT

In South Carolina, the liability of a seller for a defective product is addressed in the South Carolina Code of Laws Annotated § 15-73-10 which states in part:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if
>
>> (a) The seller is engaged in the business of selling such a product, and
>>
>> (b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"In any products liability action, a plaintiff must establish three things: (1) he was injured by the product; (2) the product was in essentially the same condition at the time of the accident as it was

when it left the hands of the defendant; and (3) the injury occurred because the product was in a defective condition unreasonably dangerous to the user." *Graves v. CAS Med. Sys., Inc.*, 735 S.E.2d 650, 658 (S.C. 2012). "If the plaintiff is pursuing a design defect claim, the only way to meet the third element is by pointing to a design flaw in the product and showing how his alternative design would have prevented the product from being unreasonably dangerous." *Id.*

> **A. Plaintiff has provided sufficient expert testimony and other evidence to establish a genuinely disputed issue of material fact regarding whether a design defect exists within the supplemental restraint system of the 2009 Toyota Camry.**

Plaintiff has produced sufficient evidence that the 2009 Toyota Camry (hereinafter "2009 Camry") was unreasonably dangerous through the testimony of Plaintiff's expert, Robert Bowser, and other evidence pertinent to conducting the risk-utility analysis. "Expert testimony may be used to help the jury to determine a fact in issue based on the expert's specialized knowledge, experience, or skill and is necessary in cases in which the subject matter falls outside the realm of ordinary lay knowledge." *Watson v. Ford Motor Co.,* 699 S.E.2d 169, 175 (S.C. 2010). The question of whether a design was defective is an issue of fact for the jury to determine. *Miles v. DESA Heating, LLC,* 2012 U.S. Dist. LEXIS 45433 *17 (D.S.C. Mar. 27, 2012). In this case, Plaintiff has provided sufficient expert testimony relevant to the risk-utility test that will help the jury ultimately determine the factual issue of whether the 2009 Camry was defectively designed.

South Carolina courts traditionally use the "risk-utility test" to determine whether a product is unreasonably dangerous as a result of a design defect. *Miles at* *14. Under this test, ". . . a product is unreasonably dangerous and defective if the danger associated with the use of the product outweighs the utility of the product." *Id.* at *14-15. Both state of the art and industry standards are relevant to show both the reasonableness of the design and that the

4

product is dangerous beyond the expectations of the ordinary consumer. *Id*. at *15. The court considers several factors in determining whether the product is defective and unreasonably dangerous, including (1) the usefulness and desirability of the product; (2) the cost involved for added safety; (3) the likelihood and potential seriousness of injury; and (4) the obviousness of danger. *Id.* Finally, "the court must balance the utility of the risk inherent in the design of the product with the magnitude of the risk to determine the reasonableness of the manufacturer's action in designing the product." *Id*.

In Toyota's Motion for Partial Summary Judgment regarding Plaintiff's design defect claim, Toyota relies on its allegation that Plaintiff has not produced an expert that specifically stated that the 2009 Camry was "unreasonably dangerous" due to its lack of rollover activated CSAs in the 2009 Camry. However, such an affirmative statement is not the type of testimony required to survive summary judgment. This was apparent in *Holst v. KCI Konecranes Int'l Corp.,* where two of the plaintiff's experts testified that the product was "unreasonably dangerous." 699 S.E.2d 715, 719 (S.C. Ct. App. 2010). The court in that case found that ". . . the testimony offered by [Plaintiff's] experts was not sufficient to prove the crane was defective and unreasonably dangerous. Neither [expert] conducted a risk-utility analysis regarding their proposed design alternative. . . . Because [plaintiff] failed to produce evidence of a feasible design alternative or that a risk-utility analysis was conducted, she cannot establish the crane was defective and unreasonably dangerous as a matter of law." *Id*. at 719-20.

Contrary to Toyota's assertion, expert testimony expressly stating the words "unreasonably dangerous" is not required for the jury to determine whether a product is unreasonably dangerous. Instead, "[t]he very nature of feasible alternative design evidence entails the manufacturer's decision to employ one design over another. This weighing of costs

5

and benefits attendant to that decision is the essence of the risk-utility test." *Branham v. Ford Motor Co.,* 701 S.E.2d 5, 16 (S.C. 2010). In *Branham,* the Court held that ". . . the exclusive test in a products liability design case is the risk-utility test with its requirement of showing a feasible alternative design." *Id.* at 14. This approach is consistent with the Restatement (Third) of Torts: Products Liability § 2(b) which states:

> A product . . . is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe.

Unlike the expert in *Holst*, Mr. Bowser gave specific expert testimony regarding the risk-utility analysis that would allow a jury to determine the factual issue of whether the 2009 Camry was defectively designed. When asked whether the absence of a rollover sensor was a defect in the Camry's design, Mr. Bowser responded, "Probably not by itself, but I think it could be contributory." Mr. Bowser explained that the "[t]echnology was there, readily available for many years prior to the manufacture of the vehicle, so it's a, I don't think it was an engineering decision to put the sensor there. I think it was probably more of an economic decision to put it there." (Ex. A, Bowser Dep. 38:25-39:10). Mr. Bowser also stated:

> Q. If that is, in fact, correct, would it be your opinion that the 2009 Toyota Camry's curtain airbag is unreasonably dangerous because it lacks a rollover sensor?
>
> A. Well, again, that's kind of a subjective term. I wouldn't buy a vehicle without that, so I don't know if that answers your question directly or not.

(Ex. A, Bowser Dep. 39:21-25, 40:1-2)

In addition, Mr. Bowser would not opine that the 2009 Camry was reasonably safe without a rollover sensor. (Ex. A, Bowser Dep. 40:9-12) Mr. Bowser also discussed state of the

art and industry standards that as early as 1999, Mercedes Benz was using this technology, followed by Volvo in 2002 and Ford and Mercury in 2006. (Ex. B, Bowser Report, p. 10).

Other evidence provided by Toyota supports Mr. Bowser's contention that a rollover activated CSA was a very feasible design alternative in this case; however, it was rejected by Toyota for use in the 2009 Camry and other passenger cars. As early as 2002, the Rollover Curtain Shield Airbag ("Rollover CSA"), designed to prevent occupant ejection from the vehicle and reduce secondary head impacts to the inside or outside of the car, was being developed by Toyota. (Ex. D, Toyota Doc., p. 207CA.0003). Documents show that Toyota was aware that occupants of its vehicles would be seriously injured or killed when a rollover activated CSA was not included. According to Toyota's own "Accident Data Analysis" for **passenger cars**, fatal injuries due to ejection by rollovers would have been reduced by about 50.5%, or 1,241 fatalities, had Toyota included a rollover activated CSA in its passenger cars. (Ex. D, Toyota Doc., p. 207CA.0004). In fact, at the same time the 2009 Camry was made, Toyota was already including rollover activated CSAs in pickup trucks, passenger vans, and SUVs. Toyota's corporate representative, Ichiro Fukumoto, confirmed this in his deposition:

> Q. To your knowledge, are there any sport utility vehicles that Toyota manufactured in 2009 that did not or were not equipped with a rollover curtain shield airbag?
>
> A. I recall that if you're talking about the '09 model, SUV's -were equipped with that.
>
> Q. What about Toyota pickup trucks for the 2009 year model?
>
> A. For pickup trucks as well, although my recollection is not all that clear to say that all were equipped with that.

(Ex. E, Fukumoto Dep. 88:17-23, 89:1-5). Toyota's expert, Michael Klima, also established the technological and economic feasibility of using a rollover activated CSA in the 2009 Camry.

7

> Q. The – I assume based on our prior conversation where Toyota does, in fact, have in their trucks, sport utility vehicles, vans, those product lines, a rollover-activated curtain shield airbag; correct?
>
> A. That's correct, as we talked about, larger, longer stand time, more mass, right.
>
> Q. You would agree, then, that from a technological and an economic standpoint that it was feasible had Toyota decided to put one in the Camry, it was possible?
>
> A. Oh, it was possible, but their due diligence and work on the topics suggested it wasn't ready for introduction in the smaller vehicles due to the potential risk of injury.
>
> Q. To out-of-position occupants?
>
> A. Correct.

(Ex. F, Klima Dep. 106:21-25, 107:1-10).

Despite its technological and economic feasibility and despite Toyota's knowledge of the number of lives that would be saved by its inclusion, Toyota chose not to include rollover activated CSAs in passenger cars. Mr. Klima opined Toyota's decision was due to the **<u>suggestion</u>** that there may be a risk of injury to out-of position occupants. However, Mr. Bowser disagrees with this suggestion. According to Plaintiff's expert, there would not be an increased risk of injury to these out-of position occupants if Toyota had included the rollover activated CSA in the 2009 Camry.

> Q. Would you agree that a curtain air bag that is designed to provide greater occupant containment will potentially lead to an increased risk of injury to out-of position occupants?
>
> A. No, I don't agree with that at all.

(Ex. A, Bowser Dep. 92:8-12).

"With the risk-utility test, the state of the art and industry standards are relevant to show both the reasonableness of the design and that the product is dangerous beyond the expectations

8

of the ordinary consumer." *Miles,* 2012 U.S. Dist. LEXIS 45433 at *15 (citing *Reed v. Tiffin Motor Homes, Inc.,* 697 F.2d 1192, 1196 (4th Cir. S.C. 1982)). In his deposition, Mr. Fukumoto spoke in regard to the expectations of consumers:

> Q.   **Do you agree that as a fundamental concept, belted occupants always must be prevented from ejection?**
>
> A.   Well, as I just mentioned, accidents are varying and over various modes, so I think it is pushing a bit too far to say that they are to be prevented at all time, no matter what the condition is. **I believe this is a concept that talks about what the people expect for the curtain shield airbag.**

(Ex. E, Fukumoto Dep. 105:16-23,106:1) (emphasis added). This evidence, coupled with Mr. Bowser's expert testimony, indicates that the rollover activated CSA was not only technologically and economically feasible, but also that Toyota was fully aware of the usefulness of a rollover activated CSA, the consumers' expectation that CSAs would prevent ejections, and the potential seriousness of the injuries and fatalities that could be caused without the rollover activated CSA in passenger cars.

The court recently considered very similar evidence in *Miles v. DESA Heating, LLC* on a motion for summary judgment. 2012 U.S. Dist. LEXIS 45433 (D.S.C. Mar. 27, 2012). In *Miles,* the defendants argued that the plaintiffs' expert did not present a reasonable alternative design that would have prevented a heater from being unreasonably dangerous; therefore the court should find that the heater was not unreasonably dangerous. *Id.* at *16. The plaintiffs provided evidence that the defendants failed to design the heater with an appropriate guard; the purpose of the guard was to protect people; the guard designed by the defendants did not protect people, and that an extended guard would have been a more feasible alternative design. *Id.* at *16-17. After considering the testimony and evidence in the light most favorable to the plaintiffs, the court in

9

*Miles* found "that the question of whether [d]efendants' design was defective is an issue of fact for the jury" and denied the defendant's motion for summary judgment. *Id*. at *17.

Similar to the plaintiffs in *Miles*, the Plaintiff in this case has provided sufficient evidence to show that Toyota failed to design the 2009 Camry to include the rollover activated CSA. The purpose of the rollover activated CSA is to protect users by preventing occupant ejection and reducing injuries to the occupants. (Ex. D, Toyota Doc., p. 207CA.0003).

## IV. CONCLUSION

When viewed in a light most favorable to the Plaintiff, there exist material questions of fact as to whether the 2009 Camry was defective by design due to its failure to incorporate a rollover sensed curtain shield airbag.

Plaintiff has established that it was economically and technologically feasible to incorporate a rollover curtain shield airbag into the 2009 Camry. Toyota installed rollover curtain shield airbags in its 2009 model year SUVs, light trucks and passenger vans. Plaintiff has established that Toyota knew that occupants of its passenger cars would be seriously injured and killed without utilizing the rollover curtain shield airbag. The only arguable reason for Toyota not installing the rollover curtain shield airbag in the subject vehicle is a suggestion that out of position occupants could be injured. A suggestion with which Plaintiff's expert Bob Bowser disagrees.

Based on the above, it is a jury question whether the 2009 Camry is defective and unreasonably dangerous, and as such Defendant's Motion for Summary Judgment is due to be denied.

Respectfully Submitted,

THE CLARDY LAW FIRM


 B. Allen Clardy, Jr.
B. Allen Clardy, Jr. (Federal ID No. 6515)
1001 E. Washington St.
Greenville, SC 29601
Telephone: (864) 233-8888
Facsimile: (864) 233-8889
E-mail: Allen@theclardylawfrrm.com

R. Graham Esdale, Jr., Esq.
Beasley Allen, Crow, Methvin, Portis & Miles,
PC Post Office Box 4160
Montgomery, AL 36103-4160
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
E-mail: Graham.Esdale@beasleyallen.com

Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court for the U.S. District Court, District of South Carolina, using the electronic case filing system of the court. The electronic case filing system sent "Notice of Electronic Filing" to the attorneys of record listed below on this _____ day of _____, 2013.

Joel H. Smith
Angela G. Strickland
Bowman & Brooke, LLP
1441 Main Street, Suite 1000
Columbia, SC 29201
(803) 726-0200

Bard D. Borkon
Bowman and Brooke, LLP
150 South Fifth Street, Suite 3000
Minneapolis, MN 55402
(612) 672-3241

**Attorneys for Defendant**
**Toyota Motor Corporation;**
**Toyota Motor Sales, U.S.A., Inc.;**
**Toyota Motor Engineering and**
**Manufacturing North America, Inc.;**
**Toyoda Gosei North America Corp.**

                                                       B. Allen Clardy, Jr.
                                                       B. Allen Clardy