UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Alacia C. Quinton as PR for the Estate of April Lynn Quinton, | ) ) ) | Civil Action No.: 1:10-cv-02187-JMC |
| Plaintiff, | ) ) | |
| v. | ) ) | Defendants' Reply to Plaintiff's Brief in Opposition to Defendants' |
| Toyota Motor Corporation; Toyota Motor Sales U.S.A., Inc.; Toyota Motor Engineering and Manufacturing North America, Inc.; Toyoda Gosei North America Corporation, | ) ) ) ) ) ) ) | Motion for Partial Summary Judgment |
| Defendants. | ) ) ) | |

Plaintiff's attempt to avoid summary judgment as to her design defect claims ignores clear South Carolina law and the undisputed facts of this case.[1] Try as she might to create a genuine issue of material fact, Plaintiff cannot sidestep her curtain shield airbag (CSA) expert's failure to opine that the 2009 Camry's CSA was defectively designed. The recognized standards for admissibility of expert opinion prevent Plaintiff's expert, Bob Bowser, from rendering opinions which he does not hold to a "reasonable degree of engineering certainty." That is the standard by which expert testimony is judged, and it is Plaintiff's burden to support her allegations and claims of defect with such expert testimony and evidence. Without such an opinion, Plaintiff's design defect claims must fail. See, e.g., Watson v. Ford Motor Co., 389 S.C. 434, 699 S.E.2d 169, 174 (2010).

---

[1] Plaintiff's Brief in Opposition to Defendants' Motion for Partial Summary Judgment was untimely filed pursuant to Local Rule 7.06. It was filed after the Court's deadline of March 4, 2013. Defendants submit this reply in the event the Court considers the merits of Plaintiff's Opposition.

In her brief, Plaintiff attempts to circumvent the rule in <u>Watson</u> by citing portions of her design expert Mr. Bowser's testimony that fall short of an opinion that the Camry's CSA is defectively designed.   Plaintiff also incorrectly interprets Defendants' and defense experts' conclusions, statements, and opinions, but even an incorrect interpretation does not eliminate Plaintiff's burden to support her claims with expert opinion that is held a reasonable degree of engineering certainty.   That burden is absolute.   Plaintiff has not met that burden.   Accordingly, the Defendants respectfully request this Court grant summary judgment as to Plaintiff's unsupported design defect claims.[2]

## I.    <u>ARGUMENT</u>

### A.    Plaintiff Lacks Sufficient Expert Opinion to Support Her Design Defect Claim.

Plaintiff does not dispute the rule that expert testimony is required to support her design defect claims; to the contrary, she cites <u>Watson</u> and contends that evidence from her lone design expert, Bob Bowser, meets this requirement.   <u>See</u> Plaintiff's Opposition, at p. 4.   Yet, none of the following evidence from Mr. Bowser that Plaintiff cites is sufficient to create a genuine issue of material fact to support her CSA design defect claim:

1. That the absence of a rollover sensor "[p]robably" did not make the Camry CSA's design defective "by itself," but Mr. Bowser "think[s] it could be contributory."

2. That the technology was "readily available" for Toyota to include a rollover sensor in the 2009 Camry.

---

[2] Plaintiff does not raise any arguments in response to the Defendants' Motion for Partial Summary Judgment to dismiss the other non-airbag defect claims related to the roof structure and seat belt. Accordingly, the Court should, at a minimum, grant Defendants' Motion for Partial Summary Judgment as to these claims.

3.  That Mr. Bowser "wouldn't buy a vehicle without" a rollover sensor.

4.  That Mr. Bowser could not opine that the 2009 Camry's CSA was reasonably safe without a rollover sensor.

5.  That Mr. Bowser referenced other manufacturers—Mercedes, Volvo, Ford and Mercury—that were using rollover sensors in their vehicles prior to model year 2009.

See Plaintiff's Opp., at pp. 6-7.

None of the aforementioned evidence rises to an opinion from Mr. Bowser that the 2009 Camry is defectively designed because its CSA lacks a rollover sensor.  To the contrary, he states that the absence of a rollover sensor, in and of itself, probably does *not* constitute a design defect.  See Exh. A to Plaintiff's Opp., at 38:25-39:4.  Mr. Bowser's statement that the absence of a rollover sensor "could be contributory" to a design defect is not an opinion held to a reasonable degree of engineering certainty; it is speculation, since there are many things Mr. Bowser might say about the Camry's CSA that "could be" true.  The fact that the technology was available for Toyota to include a rollover sensor in the 2009 Camry also does not rise to an opinion that its design is defective; for that matter, Mr. Bowser could have also said the technology was available for Toyota to have equipped the Camry with a six cylinder engine, but the fact it had a four cylinder engine instead does not make it defective.  Mr. Bowser's claim that he wouldn't purchase a vehicle for himself without a rollover sensor also does not prove defect; it may also be that Mr. Bowser wouldn't purchase a vehicle without air conditioning.  Likewise, Mr. Bowser's inability to say that the 2009 Camry's CSA was reasonably safe without a rollover sensor does not prove the converse, i.e., that it was unreasonably dangerous without this technology.  Finally, even if true, the fact that Mr.

Bowser points to other manufacturers that used rollover sensors prior to model year 2009 also does not mean he believes the Camry was defectively designed without a rollover sensor.

Plaintiff's reliance on Miles v. DESA Heating, LLC, 2012 U.S. Dist. LEXIS 45433 (D.S.C. Mar. 27, 2012) also is inapposite. Plaintiff cites Miles for the proposition that "the question of whether a design was defective is an issue of fact for the jury to determine." See Plaintiff's Opp., at p. 4. While the defendants' motion for summary judgment on design defect was denied in that case, the holding was clearly fact-specific. Unlike the present case, the plaintiffs in Miles apparently provided an expert who opined that the subject product was defectively designed, or at least they provided enough design defect testimony from their expert that the defendants did not seek summary judgment on that issue. Rather, the Miles defendants sought summary judgment based on the reasonableness of plaintiffs' expert's alternative design. The court denied the defendants' motion for summary judgment with a finding that there was an issue of material fact *in that case*. Miles did not hold that the question of whether a product's design is defective is always an issue of fact for the jury. Therefore, any reliance on Miles for a holding that expert testimony meeting the South Carolina standard is not required, or that the question of whether a design is defective cannot be resolved on summary judgment, is misplaced.

Plaintiff argues that expressly stating the words "unreasonably dangerous" is not required for the jury to determine whether a product is unreasonably dangerous. While the words "unreasonably dangerous" may not be necessary to support an expert's opinion, the expert must have an opinion that meets the requisite degree of probability.

See, e.g., Baughman v. American Tel. and Tel. Co., 306 S.C. 101, 410 S.E.2d 537 (1991) ("Our cases generally hold that, before expert testimony is admissible upon the question of the causal connection between plaintiff's injuries and the acts of the defendant, the testimony must satisfy the 'most probably' rule.  The rule has been succinctly stated as follows:  It is not sufficient for the expert…to testify merely that the ailment might or could have resulted from the alleged cause.  He must go further and testify that taking into consideration all the data it is his professional opinion that the result in question most probably came from the cause alleged."); and Smalls v. South Carolina Dept. of Educ., 339 S.C. 208, 224, 528 S.E.2d 682 (2000) (Accident reconstruction expert's testimony was excluded from evidence in wrongful death action arising from fatal car-pedestrian collision where the expert admitted on cross-examination that without knowing how fast pedestrian was running, it could not be stated with any degree of scientific certainty how long driver would have had to react, nor whether driver had time to avoid hitting pedestrian.).  Likewise, an expert's opinion cannot be based on conjecture and speculation.  Young v. Tide Craft, Inc., 270 S.C. 453, 242 S.E.2d 671 (1978) ("Expert opinion is inadmissible if its factual foundation is nebulous.").  As further explained in Defendants' Motion for Partial Summary Judgment, Mr. Bowser's use of phrases such as "could be contributory" does not meet the degree of certainty necessary for an admissible expert opinion.  What Mr. Bowser did not say is that in his opinion, the 2009 Toyota Camry is defectively designed because it lacks a rollover sensor, and that he holds this opinion to a reasonable degree of engineering certainty.  He has had multiple opportunities to offer this opinion, but he declined.  As such, his testimony cannot support Plaintiff's CSA design defect claim.

5

Additionally, Mr. Bowser testified that he did not have enough information to "really make a firm decision on whether it was a design flaw or a manufacturing flaw," or to provide an opinion that "the 2009 Toyota Camry's curtain air bag was reasonably safe, even without a rollover sensor." See Deposition of Robert Bowser, attached hereto as **Exhibit A**, at 36:7-37:2 and 40:8-12.  Mr. Bowser was only willing to testify that "if [he] was to take a lean, it would be toward that there was actually a manufacturing flaw in this particular vehicle." See **Exhibit A**, at 36:24-37:2.  And perhaps most telling, he responded to the question "can a curtain air bag be reasonably safe without a rollover sensor," by saying "[i]t can be reasonably safe, I guess you could say that." See **Exhibit A**, at 40:3-7.  If Mr. Bowser believes that curtain air bags can be reasonably safe without a rollover sensor, but has testified that he has "very little data to make an opinion on" that issue as it relates to the subject vehicle, how can Plaintiff now argue Mr. Bowser has the opposite opinion that the system is unreasonably dangerous without a rollover sensor?  If Mr. Bowser cannot exclude the possibility that the 2009 Camry may be reasonably safe without a rollover sensor, then any opinion that the 2009 Camry is unreasonably dangerous without a rollover sensor seems difficult, if not impossible to hold.  Presumably, this is why he does not offer such an opinion.

**B.     Toyota Disputes Plaintiff's Description of Certain Supposed Questions of Facts and Even If True, Those Facts Cannot Overcome Summary Judgment as to Plaintiff's Design Defect Claim.**

In her "law and argument" section of her Brief in Opposition, Plaintiff focuses on two main "facts" to support her position that material questions of fact exist.  These "facts" are that (1) it was economically and technologically feasible to incorporate a rollover CSA into the 2009, as rollover CSAs were installed in Toyota's 2009 model year

SUVs, light trucks and passenger vans, and that the only arguable reason not to do so is the "suggestion" that out of position occupants could be injured, and (2) that Toyota knew that occupants of its passenger cars would be seriously injured and killed without utilizing the rollover CSA. As explained below, Defendants strongly dispute both of these purported "facts."

1.   It was not technologically feasible to incorporate a rollover CSA into the 2009 Camry.

The Defendants dispute that a rollover CSA was technologically feasible to install in a 2009 Toyota Camry. Again, a discussion of this disagreement should not even take place in this motion because Plaintiff has no expert opinion to support that the 2009 Camry was defectively designed for a lack of rollover CSA. However, the Defendants feel compelled to address the inaccuracy of Plaintiff's assertions on this issue.

Plaintiff points this Court to testimony by the Defendant's expert, Michael Klima, as support that using a rollover CSA in the 2009 Camry was "technologically feasible." Plaintiff misinterprets this testimony and leaves out other relevant testimony on this issue by Mr. Klima. While Mr. Klima agrees that it "was possible" to put a rollover CSA in the 2009 Camry, he clearly states that Toyota's "due diligence and work on the topics suggested it wasn't ready for introduction in the smaller vehicles due to the potential risk of injury [to out-of-position occupants]." See Deposition of Michael Klima, attached hereto as **Exhibit B**, at 107:5-10. From a purely mechanical standpoint, a rollover CSA could physically be placed into any vehicle. However, a manufacturer has a duty to fully evaluate the placement of any component in its vehicles. This is the very essence of

the risk-utility analysis[3] that manufacturers are required to undertake.  Further, Toyota

did complete this evaluation, and the decision was not based on mere "suggestion" as

Plaintiff alludes.  At his deposition, Mr. Klima referenced relevant Toyota documentation

for his opinion that "Toyota evaluated the potential for including [rollover CSA]

technology in their passenger car fleet, but as of 2008 were unable to provide the

desired occupant containment performance without increasing the possibility of injury to

out-of-position occupants due to constraints and passenger car packages."  See

**Exhibit B**, at 105:11-19 and 107:11-14.  This issue was also addressed by Toyota's

corporate witness, Mr. Ichiro Fukumoto.  Mr. Fukumoto was asked "from a technological

standpoint, you would agree that it was feasible for Toyota to equip the 2009 Camry

with a rollover-activated curtain shield airbag had they chosen to do so?"  See

Deposition of Ichiro Fukumoto, attached hereto as **Exhibit C**, at 90:3-6.  He answered

that he "would have a hard time agreeing to that."  See **Exhibit C**, at 90:7.  He went on

to explain the following:

> Specific developmental work becomes necessary for each vehicle if we
> decide to provide a rollover-activated curtain shield airbag.  In other
> words, what I wanted to communicate to you is that just because an SUV
> has a rollover-activated curtain shield airbag, that does not mean that we
> can immediately start putting it in passenger cars.  And in terms of
> technical judgment, there is one reason why it is extremely difficult to
> provide that system in passenger cars.  This is from the standpoint of
> engineering.  Providing a curtain shield airbag that can activate in a
> rollover would mean that we need to expect the -- for instance, the inflator
> output needs to be stronger, as I mentioned earlier.  One of the
> requirements with respect to curtain shield airbag performance that we
> need to satisfy is to mitigate risks in terms of injury potentials or side-
> effects to an occupant who is seated on the seat out of position, and this

---

[3] Plaintiff discusses the consumer expectation test in her Brief in Opposition and provides testimony by Toyota's corporate witness, Mr. Fukumoto in support of this argument.  This entire argument is irrelevant in a motion for summary judgment on a design defect, as the only test in South Carolina to evaluate a design defect product liability case is the risk-utility test.  Branham v. Ford Motor Co., 390 S.C. 203, 701 S.E.2d 5 (2010).

requirement of reducing side-effects of an occupant is an important requirement for the curtain shield airbag. However, as I said earlier, if we were to increase the output of the inflator, as an example, that is possibly -- that would possibly aggravate the performance for out-of-position occupant. And there are differences between the SUV models and passenger models when it comes to the positional relation between the occupant and the curtain shield airbag. Generally speaking, with passenger cars the occupant head will be positioned closer to the location in which the curtain shield airbag is positioned. And so this inflator output needs to be stronger, as I mentioned earlier, and the occupant will be seated closer to the curtain shield airbag -- in terms of the internal dimension of the cabin in passenger cars. It will be difficult for us to satisfy two opposing requirements, that is to say, satisfy the performance of reduced injury potentials to an OOP, out-of-position occupant. And so simply because we were able to provide that system to SUV models, it does not mean that we can immediately put them in passenger cars, as I just explained to you, meaning that there are still engineering challenges we need to overcome to do that.

See **Exhibit C**, at 90:23 – 92:23. Therefore, not only has Plaintiff failed to establish that a rollover CSA was technologically feasible in the 2009 Camry through the testimony of her own experts, she has not established the fact through the testimony of the Defendants' witnesses.

Further, Plaintiff argues that proof of economic feasibility is supported by Mr. Bowser's testimony that he thinks "it was probably more of an economic decision to put it there." See **Exhibit A**, at 39:9-10. Such rank speculation does not rise to the level of expert opinion, and is therefore inadmissible. There is no evidence in the record to support this assertion and there is much evidence to refute it. Further, inadmissible evidence cannot be used to deny a motion for summary judgment. Baughman, 306 S.C. at 111 (1991) ("Opinion testimony, including that of expert, which would be inadmissible if testified to at trial may not be set forth in affidavit filed in opposition to summary judgment motion."); See also Fed. R. Civ. P. 56(c)(2). Therefore, Plaintiff has

also not established that any economic consideration was made in the decision by the Defendants to incorporate a rollover sensor.

Finally, even if one takes as true Plaintiff's assertion that it was technologically feasible to install a rollover sensor in the 2009 Toyota Camry, that fact by itself cannot save Plaintiff's design defect claim.  As noted above, Plaintiff's only design expert failed to opine that the Camry's CSA was defectively designed.  Therefore, the fact that Toyota could have equipped the 2009 Camry with a differently designed CSA that used a rollover sensor is irrelevant.

> 2.    Toyota did not know that serious injuries and deaths would be prevented by installing the rollover CSA in the 2009 Camry.

All automotive manufacturers know that occupants of vehicles can be seriously injured and/or killed in rollover collisions.  The desire to reduce such injuries and deaths led the National Highway Traffic Safety Administration to promulgate Federal Motor Vehicle Safety Standard 226 regarding "ejection mitigation."  FMVSS 226, which does not start to take effect until September 1, 2013, anticipates manufacturers will use CSAs in their vehicles that must meet this standard, but it does not require a rollover sensor. See 76 Fed. Reg. 3212 (January 19, 2011), at 3212 and 3283.

On this issue, Plaintiff references Toyota's analysis of field accident data and claims that it shows that "for **passenger cars**, fatal injuries due to ejection by rollovers would have been reduced by about 50.5%, or 1,241 fatalities, had Toyota included a rollover CSA in its passenger cars."  See Plaintiff's Opp., at p. 7 (emphasis in original). This is a mischaracterization of Toyota's analysis of the data.  Instead, this document states that Toyota identified the 1,241 fatalities / 50.5% data point as a "*[p]ossible* injury reduction due to ejection by roll sensing curtain air bag."  See Exh. D to Plaintiff's

Opp., at p. 4 (emphasis added).   Accordingly, Toyota has never admitted that it *unequivocally knew* that the implementation of rollover CSAs in passenger cars *would* prevent the loss of life or serious injuries.

As with the other "factual" issues raised by Plaintiff in her Brief in Opposition, the Court need not resolve these disputes to decide this motion.[4]   The dispositive issue is whether Plaintiff has provided sufficient expert opinion to make a prima facie case of design defect.   As demonstrated above, Plaintiff has failed to do so and she is instead attempting to divert the focus onto the Defendants' opinions and conclusions.   In the process, she has selectively provided information in an attempt to create a question of fact where instead, the viability of her design defect claim can and should be resolved as a matter of law.

## II.     CONCLUSION

For all the reasons identified in the Defendants' Motion for Partial Summary Judgment and herein, the Defendants ask that all of Plaintiff's design defect claims be dismissed.

---

[4] Toyota also disputes the following assertion in Plaintiff's opposition: "The parties agree that the reason the CSA did not fully deploy over the driver's front window was due to a hole in the bag from which air escaped, thereby preventing the bag from filling and properly deploying."  See Plaintiff's Opp., at p. 2.  To the contrary, Defendants contend that the driver's side curtain shield airbag ("CSA") did not fully deploy because it was entrapped and impinged by the vehicle's roof deformation, which caused the airbag to become overpressurized.  See **Exhibit B**, at 112:23-113:22.  This internal overpressure occurred as the main chamber of the forward section of the airbag was unable to fully open because of the impingement, and the pressure released by the firing of the system's inflator was directed at this forward area, splitting the material.  See **Exhibit B**, at 113:23-114:13; See Deposition of Karen Balavich, attached hereto as **Exhibit D**, at 136:4-20. ("But the bag can't expand fast enough for as fast as that gas is dumping in there, because it's impinged, it can't unroll. So…you're dumping this high rate of gas in the front chamber and…it overpressurizes and causes a tear at that tether portion.")]

Respectfully submitted,

BOWMAN AND BROOKE LLP

By: s/Angela G. Strickland
Joel H. Smith
Federal Bar No. 3910
E-mail address:
joel.smith@bowmanandbrooke.com
Angela G. Strickland
Federal Bar No. 9824
E-mail address:
angela.strickland@bowmanandbrooke.com
1441 Main Street, Suite 1200
Columbia, SC 29201
Tel: 803.726.7420
Fax: 803.726.7421

*and*

Bard D. Borkon
(*Pro Hac Vice*)
E-mail address:
bard.borkon@bowmanandbrooke.com
Bowman and Brooke LLP
150 South Fifth Street, Suite 3000
Minneapolis, MN 55402
Tel: 612-672-3241
Fax: 612-672-3200

Counsel for Defendants,
*Toyota Motor Corporation, Toyota Motor Sales,
U.S.A., Inc., Toyota Motor and Manufacturing
North America, Inc., and Toyoda Gosei North
America Corporation*

March 14, 2013