**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | |
|---|---|
| Alacia C. Quinton as PR for the Estate of April Lynn Quinton, | ) ) ) |
| Plaintiff, | ) Civil Action No.: 1:10-cv-02187-JMC ) ) **ORDER AND OPINION** |
| v. | ) ) |
| Toyota Motor Corporation; Toyota Motor Sales U.S.A., Inc.; Toyota Motor Engineering and Manufacturing North America, Inc.; Toyoda Gosei North America Corporation, | ) ) ) ) ) ) |
| Defendants. | ) ) |

      This products liability action arises out of a fatal car crash involving April Lynn Quinton ("Quinton"). Plaintiff Alacia C. Quinton ("Plaintiff"), as Personal Representative for Quinton's estate, brought a wrongful death suit against Defendants Toyota Motor Corporation, Toyota Motor Sales U.S.A., Inc., Toyota Motor Engineering and Manufacturing North America, Inc., and Toyoda Gosei North America Corporation (collectively "Defendants") alleging state law claims for strict products liability, breach of warranty, and negligence.

      Currently before the court is Defendants' Motion for Partial Summary Judgment [Dkt. No. 98] on Plaintiff's claims regarding defects in the 2009 Toyota Camry (the "Camry") driven by Quinton. Specifically, Defendants seek summary judgment on Plaintiff's allegations that the subject vehicle's roof structure and seat belt restraint system were defective generally and that the Camry's supplemental restraint system, which involves certain airbag technology, was

defectively designed because it lacked a rollover-activated curtain shield airbag ("RCSA").[1] [Dkt. No. 98]. For the reasons set forth below, the court grants summary judgment on Plaintiff's claims regarding a defective roof and defective seat belt restraint system and denies summary judgment on Plaintiff's claim of a defectively designed supplemental restraint system.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 14, 2009, decedent April Lynn Quinton was driving a rented 2009 Toyota Camry in Aiken, South Carolina. For reasons unknown, Quinton lost control of the vehicle while driving north into a left-hand curve. The car exited the road, struck an embankment, and rolled over several times before coming to rest on its wheels. During the rollover, Quinton suffered severe head injuries from which she never recovered. Quinton died on October 23, 2009.

It is undisputed that Quinton, the sole occupant of the vehicle, was wearing her seatbelt at the time of the accident. The Camry was also equipped with a supplemental restraint system, which consists of frontal airbags, front seat mounted side torso airbags and curtain shield airbags ("CSA") mounted along the roof rail above the vehicle's door on each side and are intended to protect the occupant's head upon deployment. The driver's side curtain shield airbag failed to fully deploy in this instance, which, according to Plaintiff, was the result of a hole in the airbag. Plaintiff's forensic pathologist found that Quinton's fatal head injuries occurred because her head, neck and upper body were partially ejected through her near side window opening, allowing her head to impact the ground during the rollover. *See* Burton Expert Report [Dkt. No. 98-5, at 12].

---

[1] The 2009 Toyota Camry's supplemental restraint system includes a curtain shield airbag ("CSA") that deploys above the vehicle's doors to protect a passenger's head from side impacts. The RCSA, which was not included in the 2009 Toyota Camry, has a rollover sensor that deploys the curtain shield airbags when it senses the car is rolling over.

Plaintiff initially filed a wrongful death and survival action against Defendants in the Court of Common Pleas of Aiken County, South Carolina. [Dkt. No. 1-1]. Plaintiff claimed that Quinton's death was caused by certain defects in the Camry at issue in this case. *Id*. Defendants subsequently removed the case to the United States District Court for the District of South Carolina [Dkt. No. 1] and filed answers denying liability to Plaintiff. After the completion of discovery, Defendants moved for partial summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff filed opposition to Defendants' motion for partial summary judgment, to which Defendants timely filed a reply in support of summary judgment.

## LEGAL STANDARD

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence

supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson,* 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

## DISCUSSION

Under South Carolina law, a plaintiff may bring a products liability claim under several theories, including negligence, strict liability, and warranty. *Talkington v. Atria Reclamelucifers Fabrieken BV (Cricket BV),* 152 F.3d 254, 261 (4th Cir. 1998) (stating that South Carolina appellate courts have consistently recognized this general proposition) (citations omitted). Regardless of the theory upon which the plaintiff chooses to base his cause of action, he must always establish the following elements: "(1) that he was injured by the product; (2) that the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant; and (3) that the injury occurred because the product was in a defective condition unreasonably dangerous to the user." *Talkington,* 152 F.3d at 262 (quoting *Bragg v. Hi–Ranger, Inc.,* 319 S.C. 531, 539, 462 S.E.2d 321, 326 (1995)).

A plaintiff proceeding under a design defect claim in South Carolina establishes the third element of the products liability cause of action "by 'point[ing] to a design flaw in the product and show[ing] how his alternative design would have prevented the product from being unreasonably dangerous.'" *Graves v. CAS Med. Sys., Inc.*, 401 S.C. 63, 79, 735 S.E.2d 650, 658 (2012), *reh'g denied* (Dec. 12, 2012) (quoting *Branham v. Ford Motor Co.*, 390 S.C. 203, 225, 701 S.E.2d 5, 16 (2010)). "This presentation of an alternative design must include consideration of the costs, safety and functionality of the alternative design." *Branham*, 390 at 225, 701 S.E.2d at 16. The trier of fact considers these objective factors in conducting a risk-utility test,

"weighing the costs and benefits attendant to [the manufacturer's] decision" to employ one design over another. *Id*. at 223, 701 S.E.2d at 16.

The mere fact that a product failed does not necessarily lead to an inference that the product was defectively designed. *Graves*, 401 S.C. at 80, 735 S.E.2d at 658-59. "Accordingly, the plaintiff must offer some evidence beyond the product's failure itself to prove that it is unreasonably dangerous." *Id*. In design defect cases, expert testimony is often necessary to support this showing, since such cases often involve complex matters beyond the ordinary knowledge of average jurors. *Id.*

Defendants contend that Plaintiff has failed to create a genuine issue of material fact as to 1) whether the Camry's seat belt restraint system is defective and 2) whether the Camry's roof structure was defective. Specifically, Defendants note that none of Plaintiff's experts gave an opinion about the Camry's roof structure. Furthermore, only Plaintiff's biomechanics and injury mechanism expert opined on the design of the seat belt, but he did not offer an opinion as to whether the alternative design he suggested would have prevented Quinton's partial ejection from the car or protected her from the injuries she suffered.[2] In her Response [Dkt. No. 102], Plaintiff does not address Defendants' claim that she has failed to present sufficient evidence supporting her claims of alleged defects in the seat belt restraint system or the car's roof structure, and she does not challenge Defendants' assertion that no material issues of fact exist on these claims. Therefore, finding no evidence in the record to support Plaintiff's claims, the

---

[2] Defendants also argue that Plaintiff's biomechanics and injury mechanism expert is not qualified to provide an engineering opinion regarding the design of the seat belt. It is not necessary to resolve this issue given that there is no assertion or other evidence showing that a differently designed seat belt would have prevented Quinton's injuries.

court grants summary judgment in favor of Defendants on Plaintiff's claims that the seat belt restraint system and the roof structure were defective.

Defendants further assert that they are entitled to summary judgment on Plaintiff's claims that the Camry's supplemental restraint system is defectively designed because it lacked an RCSA. Specifically, Defendants allege that Plaintiff's airbag systems expert, Bob Bowser ("Bowser"),[3] did not opine with a reasonable degree of engineering certainty that Defendants failure to include an RCSA in the supplemental restraint system rendered the system defective or unreasonably dangerous. For example, when asked whether the absence of an RCSA in the Camry constituted "a safety defect in [the system's] design," Bowser replied: "Probably not by itself, but I think it could be contributory." *Id.* (citing Dkt. No. 98-3, at 7-8). Bowser also admitted that a curtain shield airbag could be reasonably safe without a rollover sensor and further stated that he did not have enough data to state whether the Camry's CSA system would be reasonably safe without a rollover sensor. *Id.*

Plaintiff contends that she has met her burden under South Carolina law by pointing to the Camry's lack of a RCSA as the alleged design flaw and identifying the RCSA as a feasible alternative design for the supplemental restraint system. Indeed, Bowser's Report suggests that the RCSA was a feasible alternative design for use in the Camry given the use of such technology in other passenger cars beginning as early as 1999 and given that Toyota was using such technology in all of its pick-up trucks, passenger vans, and SUV's by 2009. [Dkt. No. 102-2]. Additionally, Plaintiff's submission of Toyota's own Accident Data Analysis Report [Dkt No. 102-4, at 5], which found that outfitting passenger cars with RCSAs could lead to a possible 50.5% reduction in fatal injuries due to ejection during rollovers, suggests that Quinton's injuries

---

[3] Defendants do not challenge Bowser's qualifications as an expert.

might have been lessened had the Camry been equipped with an RCSA. Further, testimony from Toyota's expert suggests that installing an RCSA in the Camry was possible from a technological and economic standpoint. *See* Kilma Deposition [Dkt. No. 102-6, at 4]. Bowser also opined that there were no engineering obstacles to including an RCSA in the Camry, given the availability of the technology for a number of years prior to 2009. [Dkt. No. 102-1, at 5]. Bowser and Toyota's expert disagreed as to whether the introduction of the RCSA in smaller vehicles like the Camry would have created a potential risk of injury to out-of-position occupants. *Compare* Klima Deposition [Dkt. No. 102-6)] *with* Bowser Deposition [Dkt. No. 102-1, at 7].

After considering the testimony and evidence in a light most favorable to Plaintiff, the court finds that Plaintiff has pointed to some evidence of a design flaw in the supplemental restraint system, which is supported by expert testimony that the lack of an RCSA could contribute to a safety defect. Additionally, Plaintiff has presented testimonial and documentary evidence tending to create genuine issues of material fact on each of the issues relevant to the feasible alternative design analysis as described in *Branham*. "Whether this evidence satisfies the risk-utility test is ultimately a jury question." *Branham*, 390 S.C. at 219, 701 S.E.2d at 13. Accordingly, the court denies Defendants' request for summary judgment on this claim.

## CONCLUSION

The court hereby **GRANTS** summary judgment in favor of Defendant on Plaintiff's claims that the Camry's seat belt restraint system and roof structure were defective. The court **DENIES** Defendants' motion for summary judgment on Plaintiff's claim of a design defect in the Camry's supplemental restraint system.

**IT IS SO ORDERED**.

*[Signature: J. Michelle Childs]*

United States District Judge

April 17, 2013
Greenville, South Carolina

8