```
                    UNITED STATES DISTRICT COURT
                    DISTRICT OF SOUTH CAROLINA
                         AIKEN DIVISION
```

| | |
|---|---|
| Alacia C. Quinton as PR for the Estate of April Lynn Quinton, | ) Civil Action No.: 1:10-cv-02187-JMC ) ) |
| Plaintiff, | ) ) |
| v. | ) **DEFENDANTS' RESPONSE TO** ) **PLAINTIFF'S MOTION *IN LIMINE*,** |
| Toyota Motor Corporation; Toyota Motor Sales U.S.A., Inc.; Toyota Motor Engineering and Manufacturing North America, Inc.; Toyoda Gosei North America Corporation, | ) **NO. 10** ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Plaintiff, in her Motion *in Limine* Number 10, argues that Karen Balavich should be prevented from offering an opinion that Plaintiff alleges is based upon her "belief." As is discussed below, Ms. Balavich has ample experience, foundation, and support for her opinion that Plaintiff's expert, Richard Edwards' opinion as to a manufacturing defect in the Curtain Shield Airbag is unsupported. In this case, her testimony is relevant, will assist the trier of fact, and is based on reliable information. Therefore, Plaintiff's motion should be denied.

## **ANALYSIS**

Plaintiff's expert, Richard Edwards has provided an opinion that the entire hole found in the subject CSA after the accident was caused by a sharp object that ripped the bag during the manufacturing process, prior to folding. He bases this opinion – that all of the bag's torn fibers must have been created during the manufacturing process – on testing he conducted, where he was unable to cause a CSA to overpressurize and

burst. He is also critical of the lack of QA/QC documentation, which was produced subsequent to his deposition.[1]

At the first opportunity for response, in her report dated November 30, 2012, Ms. Balavich explains the underlying facts regarding Mr. Edwards' opinion as follows:

> Mr. Edwards's claim that the CSA was cut prior to folding and module assembly, creating the tears in only the outer fabric panel in the configuration of the tear post-accident is **unsupported by any factual data**. Mr. Edwards failed to demonstrate how the manufacturing process lends itself to the fabric being cut. **From my direct experience in designing and developing curtain airbag systems, I have had several opportunities to tour, observe, and participate in the development of quality controls in place for airbag manufacturing.** The manufacturing of safety products is highly controlled and monitored with many rigorous inspection parameters. Inspection begins with the raw materials that produce the yarn. As yarn is delivered into the weaving facility it again is tested for conformance. Quality controls are in place at each operation through receiving the incoming yarn, after weaving, after scouring prior to coating, after the coating operation, after laser cutting the weaved fabric and separating into individual bags and prior to packaging. The quality control process chart for the Camry CSA manufactured at STB Textile Industries is presented in Bates TNGA000197-TGNA000201. There is a 100% visual inspection of each curtain airbag before it leaves the weaving facility. If an oddity is apparent the inspection operator can reference Limit Samples (Bates TGNA000247-299) to qualify the acceptance of the oddity. Inspection reports are also generated to document the characteristics of tests performed on production lots (Bates TGNA000202-TGNA000204) for conformance to specifications. There is a 100% visual inspection of each curtain airbag before it leaves the weaving facility. Prior to the point where Toyoda Gosei Thailand Company (TGT) folds the curtain and assembles additional components, TGT would again inspect for defects in the fabric via an illuminated table.

See Report of K. Balavich dated November 30, 2012, pp. 20-21, attached hereto as **Exhibit A** (emphasis added). The above excerpt is based, not only on Ms. Balavich's personal experience, but also cites to many documents produced in this litigation,

---

[1] Despite allowance under the Federal Rules for rebuttal opinions, Mr. Edwards has not provided any revised or supplemental opinions, or bases for his original opinions, based on the QA/QC documentation and accompanying discovery response explaining the very thorough process.

obtained from the component part manufacturers, TGT and STB, for support. Based on these facts, Ms. Balavich opines that "Mr. Edwards' claim of a manufacturing defect is unsupported." See **Exhibit A** at p. 21. She rendered this opinion to a reasonable degree of engineering certainty. Id. at p. 22.

Subsequent to issuing her report, Ms. Balavich was deposed. In her deposition, Ms. Balavich further explained the quality control processes at the manufacturing plants for TGT and STB in detail – over 30 pages of her deposition. See Deposition of K. Balavich, 71:1 – 106:12, attached hereto as **Exhibit B**. Plaintiff did not cite to this testimony in support of her motion, instead focusing on only two pages (pp. 157-158) from Ms. Balavich's deposition, and ignoring her report in its entirety.

Finally, to the extent Plaintiff takes issue with Ms. Balavich's statement that she does not "believe that this bag" got a hole during the manufacturing process, it should be noted that her use of the word "believe" was in direct response to Plaintiff's counsel's leading question that suggested the answer.

> Q. And **you don't believe** that it's possible for a bag to slip by the inspection procedures that TGNA and STB have in place?
>
> A. **I don't believe** that this bag had this type of tear in it and went by their inspections without being noticed.

See **Exhibit B** at 158:12 – 17 (emphasis added).

## **CONCLUSION**

Ms. Balavich has provided an opinion, in both her report and deposition, which is based on her experience, as well as reliable, relevant, and documented facts and observations. Her testimony and opinion criticizing Mr. Edwards' manufacturing defect

opinions are well-founded, relevant and will assist the trier of fact in fully understanding the evidence on the issue of quality control and quality assurance conducted by the Defendants. The mere use of the word "believe," which she was led into using, does not cause her opinions to no longer be based on the solid ground that she has continually relayed in this case. For these reasons, Plaintiff's motion should be denied.

BOWMAN AND BROOKE LLP

By: s/Angela G. Strickland
Richard H. Willis
Federal Bar No. 4700
E-mail address:
richard.willis@bowmanandbrooke.com
Angela G. Strickland
Federal Bar No. 9824
E-mail address:
angela.strickland@bowmanandbrooke.com
1441 Main Street, Suite 1200
Columbia, SC 29201
(803) 726-7420

a*nd*

Bard D. Borkon
(*Pro Hac Vice*)
E-mail address:
bard.borkon@bowmanandbrooke.com
Bowman and Brooke LLP
150 South Fifth Street, Suite 3000
Minneapolis, MN 55402
Tel: 612-672-3241
Fax: 612-672-3200

Counsel for Defendants,
*Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor and Manufacturing North America, Inc., and Toyoda Gosei North America Corporation*

Date: May 31, 2013