UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Alacia C. Quinton as PR for the Estate of April Lynn Quinton, | ) ) ) | Civil Action No.:  1:10-cv-02187-JMC |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| Toyota Motor Corporation, Toyota Motor Sales U.S.A., Inc., Toyota Motor Engineering and Manufacturing North America, Inc.; Toyoda Gosei North America Corporation, | ) ) ) ) ) ) ) | **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 4** |
| Defendants. | ) ) ) | |

Defendants, Toyota Motor Corporation, Toyota Motor Sales U.S.A., Inc., Toyota Motor Engineering and Manufacturing North America, Inc., and Toyoda Gosei North America Corporation (hereinafter "Defendants") respectfully request this Court to deny Plaintiff's Motion *In Limine* No. 4 and permit evidence on how the design and performance of the 2009 Toyota Camry ("Camry") compares with other vans and passenger vehicles on the market at the time of the Camry's manufacture and sale.

## I.    THE EVIDENCE AT ISSUE

Plaintiff alleges that the Camry's design was defective due to a failure to include a rollover activated airbag.  As one consideration for the jury, Defendants will offer evidence that the Camry's curtain shield airbag ("CSA") system was consistent with the airbag systems implemented in 94% of other 2009 model year passenger cars on the market at the time of the Camry's manufacture, in that it did not incorporate a sensor that would deploy the CSA in a rollover.

1

## II.    ARGUMENT

Evidence of what technology other manufacturers used to deploy their cars' CSAs—i.e., evidence of industry custom and practice—is relevant to the jury's application of the risk-utility design defect test under South Carolina law.    Industry custom evidence is relevant and routinely admitted in South Carolina products liability cases.  See Bragg v. Hi-Ranger, Inc., 319 S.C. 531, 544, 462 S.E.2d 321, 329 (Ct. App. 1995) ("in the overall balance of risk and utility of the product, evidence of industry custom is relevant to the ordinary user's expectations"); Holst v. KCI Konecranes Int'l Corp., 390 S.C. 29, 39, 699 S.E.2d 715, 720–21 (Ct. App. 2010).  Moreover, industry standards are admissible under the exclusive test the Supreme Court of South Carolina adopted for design defect claims—the risk-utility test—and important considerations when analyzing plaintiff's required alternative design.  See Branham v. Ford Motor Co., 390 S.C. 203, 225, 701 S.E.2d 5, 16–17 (2010).  Significantly, Plaintiff cites absolutely no legal authority holding that industry custom evidence is wholly irrelevant and unfairly prejudicial.

### a. Industry Custom Evidence is Relevant and Admissible in a South Carolina Product Liability Case

The airbag technology used in other passenger cars in the 2009 model year is relevant and admissible evidence for the jury to consider when balancing the risks and benefits of the CSA's design in the 2009 Toyota Camry.  Specifically, Toyota intends to argue and prove that 94% of all model year 2009 passenger vehicles did not implement a rollover sensor.  See Expert Report of Michael E. Klima, at p. 11, attached hereto as **Exhibit A**; M. Klima Dep. 104:4–8; 110:2–6, Dec. 6, 2012, relevant portions attached hereto as **Exhibit B**; Defense Trial Exh. 143, attached hereto as **Exhibit C**.  Under

South Carolina law, evidence of industry custom is relevant in order to determine whether a product was defective and unreasonably dangerous at the time of sale, and as a factor in the risk-utility test for design defect claims.  See Bragg v. Hi-Ranger, Inc., 319 S.C. 531, 544, 462 S.E.2d 321, 329 (Ct. App. 1995) (citing Reed v. Tiffin Motor Homes, Inc., 697 F.2d 1192, 1197 (4th Cir. 1982)); Branham v. Ford Motor Co., 390 S.C. 203, 701 S.E.2d 5 (2010) (stating "the law should encourage manufacturers to continue to improve their products in terms of utility and safety free from prior design decisions judged through the lens of hindsight").

It is well-established in South Carolina that Defendants may introduce evidence of other manufacturers' CSA technologies as of 2009.  In Holst v. KCI Konecranes Int'l Corp., the decedent suffered fatal injuries when a crane operator inadvertently lowered an industrial container on him.  Holst alleged the crane was defectively designed because of visibility limitations from the crane operator's cab.  Holst, 390 S.C. at 34, 699 S.E.2d at 718.  As an alternative design, Holst proposed mounting a close-circuit video camera on the edge of the crane's trolley to in increase the operator's visibility.  Id.  The trial court granted summary judgment on Holst's design claims, which the court of appeals affirmed.  On appeal, Holst alleged the trial court erred by allowing evidence of industry custom.  Id. at 39, 699 S.E.2d at 720–21.  The South Carolina Court of Appeals agreed with the trial court's decision to consider industry custom in its determination of whether or not a product was defective and unreasonably dangerous.  Id.[1]

---

[1] In analyzing whether the product was defective and unreasonably dangerous, the court applied both the "consumer expectations test" and the "social utility test," and found evidence of industry custom relevant to both analyses.  Although Plaintiff's Motion *In Limine* No. 4 is limited to her design claim, and design claims are now exclusively analyzed under the risk-utility test, the Holst rationale suggests that industry customs

The appeals court stated that although the trial court considered "industry custom in determining Holst failed to produce competent evidence that the crane was defective and unreasonably dangerous, it was only one factor considered by the court." Id. at 39, 699 S.E.2d at 721.  Therefore, the appeals court did not find this in err because it was merely one factor in the defect analysis; and "this court has given weight to conformity with industry custom," previously.  Id. (citing Bragg, 319 S.C. at 544, 462 S.E.2d at 329) ("While conformity with industry practice is not conclusive of the product's safety, the cases where a member of industry will be held liable for failing to do what no one in his position has ever done will be infrequent.")).

Prior to South Carolina state court opinions like Holst and Bragg, the Fourth Circuit predicted that South Carolina would find industry custom evidence as a relevant factor in determining whether a product is defective and unreasonably dangerous.  See Reed v. Tiffin Motor Homes, Inc., 697 F.2d at 1197.  At issue in Reed was whether a motor home's fuel system was defectively designed and manufactured.  The trial court permitted evidence of "the state of the art, custom and industry standards concerning the location of the auxiliary gas tank," the purpose of such evidence was "to show that the design was not defective or unreasonably dangerous, that it met reasonable consumer expectation and that the defendant exercised due care in selecting the location [of the gas tank]." Id. at 1195.  On appeal, the Fourth Circuit held that South

---

are similarly admissible to manufacturing defects, which are analyzed under the consumer expectations test.  See Branham v. Ford Motor Co., 390 S.C. at 220, 701 S.E.2d at 14 ("While the consumer expectations tests fits well in manufacturing defect cases, we do agree with Ford that the test is ill-suited in design defect cases.  We hold today that the exclusive test in a products liability design case is the risk-utility test with its requirement of showing a feasible alternative design.").  See also, Reed v. Tiffin Motor Homes, Inc., 697 F.2d at 1197.

Carolina would admit evidence on state of the art and trade customs in design defect cases, as is consistent with the majority of other courts.  See id. at 1196.  Specifically, the Reed court found that such evidence is "relevant in helping the jury make a determination of whether the product is unreasonably dangerous" and "only one element in that determination, [but] it is a necessary aid to assist the trier of fact in determining the reasonableness of the manufacturers' design."  Id. at 1197.

Accordingly, evidence of the Camry's CSA design in relation to other 2009 model year vehicles is relevant and fully admissible under South Carolina law.  Similarly, Plaintiff has offered no evidence or legal support that industry custom evidence is unfairly prejudicial.  Industry custom is plainly admissible as a one factor in determining whether the Camry was defective and unreasonably dangerous.  Defendants are not, as Plaintiff's misconstrue, suggesting to the jury that by allowing such evidence it must condemn nearly all other passenger vehicles if it finds April Quinton's vehicle defective.

III.    CONCLUSION

Defendants respectfully request that the Court deny Plaintiff's Motion *In Limine* No. 4 and permit evidence that the 2009 Camry's CSA design compares favorably with other passenger cars on the market at the time of its manufacture.

Respectfully submitted

BOWMAN AND BROOKE LLP

By: s/Richard H. Willis
Richard H. Willis
Federal Bar No. 4700
E-mail address:
richard.willis@bowmanandbrooke.com
Angela G. Strickland
Federal Bar No. 9824
E-mail address:
angela.strickland@bowmanandbrooke.com
1441 Main Street, Suite 1200
Columbia, SC 29201
(803) 726-7420

a*nd*

Bard D. Borkon
(*Pro Hac Vice*)
E-mail address:
bard.borkon@bowmanandbrooke.com
Bowman and Brooke LLP
150 South Fifth Street, Suite 3000
Minneapolis, MN 55402
Tel: 612-672-3241
Fax: 612-672-3200


Counsel for Defendants,
*Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor and Manufacturing North America, Inc., and Toyoda Gosei North America Corporation*

Date:  May 31, 2013