## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## AIKEN DIVISION

| | | |
|---|---|---|
| **Alacia C. Quinton as PR for the Estate of April Lynn Quinton,** | ) ) ) | C/A No. <u>**1:10-2187-JMC**</u> |
| **Plaintiff,** | ) ) | **Plaintiff's Brief in Response to Court's June 6th Order on whether Defendant** |
| **v.** | ) ) | **TGNA is liable for punitive damages.** |
| **Toyota Motor Corporation, et al.,** | ) ) | |
| **Defendants.** | ) | |

Defendant Toyoda Gosei North America Corporation's ("TGNA") is an "importer" as defined by federal law. The subject airbag was manufactured by a Thailand company. That company then shipped the airbag to Toyoda Gosei Thailand where additional parts to the airbag was installed. Defendant TGNA *imported* the airbag from Toyoda Gosei Thailand. TGNA installed the inflator on the airbag and sold it to Defendant Toyota for use on the Toyota Camry. TGNA claims that it can only be held liable in strict liability and no other theory, such as recklessness or wantonness, because all it did was sell the airbag. Thus, it contends that it could not be subject to punitive damages. But federal law is clear that an "importer" is treated just like a "manufacturer" and is held to the same duties and responsibilities of a manufacturer.

The Consumer Product Safety Act was established to "protect consumers from unreasonable risks of injury." 15 U.S.C.S. § 2051 (b)(1). The Act defines a manufacturer as any person who manufactures or *imports* a consumer product. 15 U.S.C.S. § 2052 (a)(11) Under the Motor Vehicle Safety Act, "manufacturer" is defined as "a person (A) manufacturing or assembling motor vehicles or motor vehicle equipment; or (B) *importing* motor vehicles or motor vehicle equipment for resale." 49 U.S.C. 30102(a)(5). Clearly, airbags are "motor vehicle

equipment." Thus, under the Motor Vehicle Safety Act, TGNA is deemed to be the "manufacturer" of the airbag and all the requirements to import reasonably safe consumer products manufactured outside of the United States become the responsibility of the importer under the Act.

An importer must implement an adequate product safety program to insure the protection of consumers. In October of 1975, the Consumer Product Safety Commission (CPSC) issued a policy on importation of consumer products published at 16 CFR 1009.3. The CPSC stated:

> This policy states the Commission's views as to imported products subject to the Consumer Product Safety Act (15 U.S.C. 2051) and the other Acts the Commission administers: The Federal Hazardous Substances Act (15 U.S.C. 1261), the Flammable Fabrics Act (15 U.S.C. 1191), the Poison Prevention Packaging Act (15 U.S.C. 1471), and the Refrigerator Safety Act (15 U.S.C. 1211). Basically, the Policy states that in order to fully protect the American consumer from hazardous consumer products *the Commission will seek to ensure that importers* and foreign manufacturers, as well as domestic manufacturers, distributors, and retailers, *carry out their obligations and responsibilities under the five Acts.* The Commission will also seek to establish, to the maximum extent possible, uniform import procedures for products subject to the Acts the Commission administers.

16 C.F.R. §1009.3 (a) The rule recognized "the critical position of importers in protecting American consumers from unreasonably hazardous products made abroad and accordingly, under that Act, importers are made subject to the same responsibilities as domestic manufacturers." 16 C.F.R. §1009.3(b) "Consumer Products Exported to the United States: Who is Responsible for Safety?" is the transcript of a video issued in 2008 by the CPSC. Included, among other issues, is the statement:

> Under the Consumer Product Safety Act, the term "manufacturer" is defined to include any person who imports a consumer product. Importers are directly responsible for the safety of products they bring into the United States.

(Ex. A- "Slide 10: Importer and Manufacturer Responsibilities")

Despite these duties imposed upon it by federal law, TGNA, as the importer of the airbag, did nothing to insure the imported airbag was reasonably safe for the consumers. TGNA's corporate representative, Mr. Schorle, was offered to testify about TGNA's "knowledge relating to the design, development, manufacture, assembly, and testing of the driver's curtain shield airbag in the 2009 U.S. bound Camry (Sedan)." (*see* Response to Request No. 15, p. 46 attached as Ex. B)

In response to questioning by counsel for TGNA about any quality control measures in place at TGNA to insure the safety of the airbags, Mr. Schorle responded as follows:

> Q. Now, Graham asked you some questions about QA/QC controls or QA/QC checks on the actual bag itself. Would -- would there be QA/QC checking of the integrity of the bag by SBT or TBS, the initial bag manufacturer?
>
> A. **I really don't know the answer to that.**
>
> Q. And then once TG Thailand gets the bag, is there a QA/QC process in place there to check to see that you're getting what you think you're buying?
>
> A. **Again, I don't know directly if there is.** I would expect that there is.
>
> Q. And then when TG Thailand then sends the bag to --where does it go from TG Thailand, it would go from there to TG Missouri?
>
> A. TG Missouri, correct.
>
> Q. Do they have a QA/QC process in place to check to see that the bag is what you – what you intend to buy and install?
>
> A. Yes, they do.
>
> Q. And what would that be?
>
> A. Again, based on the documents that we were looking at earlier, and **I'm not familiar with exactly what it is that they do,** but there would be – in my familiarity with the process, there's receiving inspection. As the product comes in, it is audited, if you will. For example, parts may be moved, disassembled, measured, checked for whatever items are on that list to be check for.

(Schorle Dep. 86-88 attached as Ex. C)  As the corporative representative of TGNA, Schorle did not know any details of any quality control measures at TGNA and he did not know if any quality control measures were in place at the Thailand companies who manufactured the airbag and who TGNA imported the bags from.

An importer, such as TGNA, may not stick its head in the sand and hope everything is alright with the products its import and then provides to the American public.  TGNA is considered a "manufacturer" in eyes of the law and have the same duties and responsibilities to insure the product is safe.  The failure of TGNA to know of what quality control measures were in place at the Thailand companies who manufactured the airbag and its own lack of knowledge about any of its own alleged quality control policies is clear and convincing evidence of reckless conduct, allowing the Plaintiffs to pursue their claims of punitive damages.

## CONCLUSION

As the Court is aware, the Plaintiffs are re-deposing Mr. Schorle this week on TGNA's knowledge about the quality control policies at TGNA.  Although the law seems clear that, as an importer, TGNA is treated no differently than the "manufacturer" of a product and thus may be held liable for its reckless conduct, Plaintiffs request that the Court reserve judgment on TGNA's oral motion for summary judgment on punitive damages until such time as Mr. Schorle's deposition can be completed and this brief can be supplemented with the same.

                                              Respectfully Submitted,

                                              THE CLARDY LAW FIRM

                                               s/ B. Allen Clardy, Jr.
                                              B. Allen Clardy, Jr. (Federal ID No. 6515)
                                              1001 E. Washington St.
                                              Greenville, SC 29601

Telephone: (864) 233-8888
Facsimile: (864) 233-8889
Email: Allen@theclardylawfrrm.com

William E. Hopkins, Jr. (Fed. I.D. #6075)
HOPKINS LAW FIRM, LLC
12019 Ocean Highway
Pawleys Island, South Carolina 29585
Telephone: (843) 314-4202
Facsimile: (843) 314-9365
Email: bill@hopkinsfirm.com

R. Graham Esdale, Jr.
J. Cole Portis

BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103-4160
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Email: Graham.Esdale@beasleyallen.com
Cole.Portis@beasleyallen.com

Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court for the U.S. District Court, District of South Carolina, using the electronic case filing system of the court. The electronic case filing system sent "Notice of Electronic Filing" to all attorneys of record listed below on this __**11**[th]__ day of __**June**__, 2013.

Joel H. Smith
Angela G. Strickland
Richard H. Willis
Bowman & Brooke, LLP
1441 Main Street, Suite 1000
Columbia, SC 29201
(803) 726-0200

Bard D. Borkon
Bowman and Brooke, LLP
150 South Fifth Street, Suite 3000
Minneapolis, MN 55402
(612) 672-3241

**Attorneys for Defendant
Toyota Motor Corporation;
Toyota Motor Sales, U.S.A., Inc.;
Toyota Motor Engineering and
Manufacturing North America, Inc.;
Toyoda Gosei North America Corp.**

_____
B. Allen Clardy